UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL JAMES CROOK,

       Plaintiff,                           Case No. 1:14-cv-118

v.                                               HON. JANET T. NEFF

RABBIT RIVER ENTERPRISES, INC.,

       Defendant.
_____/

## OPINION

Plaintiff filed this case against Defendant, his former employer, alleging that Defendant failed to pay him wages and overtime compensation in accordance with the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq*. Pending before the Court is Plaintiff's "Motion for Partial Summary Judgment" (Dkts 37, 38). Defendant has filed a Response (Dkts 39, 40) opposing the motion on the grounds that genuine issues of material fact exist with respect to the nature of Plaintiff's employment and whether he is properly exempt from overtime compensation under the FLSA. Plaintiff has filed a Reply (Dkt 41). Having fully considered the parties' briefs, and accompanying exhibits, the Court finds that the facts and arguments are adequately presented in these materials and that oral argument is unnecessary. *See* W.D. Mich. LCivR 7.2(d). For the reasons that follow, the Court determines that Plaintiff's motion is properly denied.

### I. Facts[1]

1. Rabbit River is a trucking company in Holland, Michigan.

---

[1] The parties have filed a Joint Statement of Material Facts (JSMF) (Dkt 37-1), which sets forth the key underlying undisputed facts, as cited herein.

2. Rabbit River is an "enterprise engaged in commerce or in the production of goods for commerce" as it has "employees engaged in commerce or in the production of goods for commerce" and "is an enterprise whose annual gross volume of sales made or business done is not less than $500,000." *See* 29 U.S.C. § 203(s)(1)(A).

3. Bruce Hassevoort is the sole shareholder of Rabbit River Enterprises, Inc.

4. Eric Hassevoort is the head dispatcher for Rabbit River.

5. Daniel J. Crook was an employee of Rabbit River from about June 2012 to August 23 or 24, 2013.

6. From July 8, 2012 to August 23 or 24, 2013, Daniel Crook was employed with Rabbit River in the role of dispatcher.

7. Rabbit River did not track or log the hours that dispatchers worked.

8. Daniel Crook did not log the hours he worked at Rabbit River.

9. Crook did not conduct performance reviews of any Rabbit River employees.

10. Bruce Hassevoort did not consult with the Department of Labor, an attorney, or an accountant to determine if the position of dispatcher was exempt from the FLSA overtime requirement and did not know if the position of dispatcher was exempt.

On February 3, 2014, Plaintiff filed this case claiming that he was never paid overtime and was improperly classified by Defendant as an "exempt" employee. Following discovery, Plaintiff moved for partial summary judgment on the issue of liability.

## II. Legal Standard

A party may move for partial summary judgment, identifying the part of each claim on which summary judgment is sought. FED. R. CIV. P. 56(a). Summary judgment is proper "if the movant

shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* The court must consider the evidence and all reasonable inferences in favor of the nonmoving party. *Burgess v. Fischer*, 735 F.3d 462, 471 (6th Cir. 2013); *U.S. S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013) (citation omitted).

The moving party has the initial burden of showing the absence of a genuine issue of material fact. *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 200 (6th Cir. 2010). The burden then "shifts to the nonmoving party, who must present some 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "There is no genuine issue for trial where the record 'taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Burgess,* 735 F.3d at 471 (quoting *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "The ultimate inquiry is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Sierra Brokerage Servs.*, 712 F.3d at 327 (quoting *Anderson,* 477 U.S. at 251-52).

### III. Analysis

Plaintiff seeks summary judgment on the issue of Defendant's liability for violations of the FLSA. Defendant argues that summary judgment is improper because there are genuine issues of material fact regarding the actions of the parties, Plaintiff's duties and responsibilities, and his autonomy and exercise of discretion as a dispatcher for Defendant, which are instrumental in determining whether Plaintiff, a salaried employee, was properly exempted from overtime compensation. The Court agrees that genuine issues of material fact exist with regard to Defendant's liability under the FLSA.

The parties do not dispute the governing legal principles. The FLSA requires that an employee covered under the Act receive overtime pay "at a rate not less than one and one-half times the regular rate at which he is employed" if he works a workweek longer than forty hours. 29 U.S.C. § 207(a)(1); *see also Alvarez v. Key Trans. Serv. Corp.*, 541 F. Supp. 2d 1308, 1311 (S.D. Fla. 2008). However, the FLSA overtime wage requirement does not apply to "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1); *see Alvarez*, 541 F. Supp. 2d at 1311.

The question is whether Plaintiff was exempt from the overtime provisions of the FLSA as an "administrative," employee, which is the only FLSA exemption applicable in this case. "To determine whether a genuine issue exists about whether Plaintiff qualified as an "administrative" [] employee within the meaning of section 213(a)(1), the Court looks to applicable case law and to the Code of Federal Regulations." *Alvarez*, 541 F. Supp. 2d at 1312.

"'The employer bears the burden of proving that an employee is exempt from overtime payments." *Allemani v. Pratt (Corrugated Logistics) LLC*, 1:12-CV-00100-RWS, 2014 WL 2574536, at *7 (N.D. Ga. June 6, 2014) (citations omitted). However, "FLSA provisions are to be interpreted liberally in the employee's favor and its exemptions construed narrowly against the employer." *Rock v. Ray Anthony Int'l, LLC*, 380 F. App'x 875, 877 (11th Cir. 2010)

"An employee is considered an 'administrative' employee if he meets the following three requirements: (1) the employee is compensated on a salary or fee basis of at least $455 per week; (2) whose primary duty is 'the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers'; and (3) whose primary duty includes the 'exercise of discretion and independent judgment with respect to

matters of significance.'" *Alvarez*, 541 F. Supp. 2d at 1312 (quoting 29 C.F.R. § 541.200). The parties agree that the first prong of the administrative exemption is met: Plaintiff was paid more than $455 per week. They dispute the second and third prongs: whether Plaintiff performed duties directly related to Defendant's management or business operations, and whether he exercised discretion and independent judgment regarding matters of significance.

### A. Management or General Business Operations

"The phrase 'directly related to the management and business operations' requires the employee to 'perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment.'" *Alvarez*, 541 F. Supp. 2d at 1312-13 (quoting 29 C.F.R. § 541.201(a)). Under the Code of Federal Regulations, work directly related to management or general business operations includes work in the following "functional areas": "tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities." *Id.* (quoting 29 C.F.R. § 541.201(b)).

Plaintiff observes that recent guidance from the Department of Labor clarifies the "difference between business operations and a company's business":

> [T]he administrative exemption is "limited to those employees whose primary duty relates 'to the administrative as distinguished from the production operations of a business.'" 69 Fed. Reg. 22122, 22141 (April 23, 2004), quoting the 1949 Weiss Report. In other words, "it relates to employees whose work involves servicing the business itself – employees who 'can be described as staff rather than line employees.'" *Id.*, quoting the 1940 Stein Report.

5

> This "production versus administrative" dichotomy is intended to distinguish "between work related to the goods and services which constitute the business' marketplace offerings and work which contributes to 'running the business itself.'" *Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120, 1127 (9th Cir. 2002), quoting *Bratt v. County of Los Angeles*, 912 F.2d 1066, 1070 (9th Cir. 1990); *see Davis v. J.P. Morgan Chase & Co.*, 587 F.3d 529, 535 (2nd Cir. 2009) ("[W]e have drawn an important distinction between employees directly producing the good or service that is the primary output of a business and employees performing general administrative work applicable to the running of any business."); *Dalheim v. KDFW-TV*, 918 F.2d 1220, 1230 (5th Cir. 1990) (the dichotomy distinguishes between "those employees whose primary duty is administering the business affairs of the enterprise from those whose primary duty is producing the commodity or commodities, whether goods or services, that the enterprise exists to produce and market"); Wage and Hour Opinion Letter FLSA2005-21 (Aug. 19, 2005) (same).

(Pl. Br., Dkt 38 at 10, quoting Ex. 6, Wage and Hour Div., U.S. Dept. of Labor, Administrator Interpretation No. 2010–1 (Mar. 24 2010); *see also Allemani*, 2014 WL 2574536, at * 8; *Rock*, 380 F. App'x at 878.

Plaintiff argues that all of his duties fall squarely into activities that are part of the output of the business, not the running of the company's operations. He asserts that all of his duties were related to the "product" that Defendant produced: "moving freight" (Pl. Br. at 11). Further, he did not handle any work in the "functional areas" identified by the Regulations, such as tax, finance, accounting, etc. Plaintiff asserts that he did not perform any duties related to personnel or the internal functions of the company; instead, his role dealt with the service Defendant provided to its customers (*id.* at 12). Plaintiff contends that his duties are not in dispute and that his case is very similar to other cases in which the courts have held that dispatchers for a trucking company were not exempt administrative employees, e.g., *Allemani*, 2014 WL 2574536 (trucking dispatcher's primary duties were not management-type activities and he made no personnel decisions, and thus he was not exempt under the administrative exemption); and *Alvarez*, 541 F. Supp. 2d 1308 ("night

dispatch manager" for a chauffeur service in south Florida who dispatched drivers to their assigned jobs transporting customers was not an exempt administrative employee).

Defendant argues that there are facts in dispute concerning this element of the administrative exemption. Defendant asserts that dispatchers at some companies have very limited roles, whereas in others, the duties and responsibilities assigned to the dispatcher position are more expansive. Defendant cites a case in which the court held that a dispatcher was an administrative employee who met the administrative exemption, *Rock*, 380 F. App'x 875 (dispatcher for a crane rental company qualified as an exempt administrative employee).

Plaintiff acknowledges that while he may have had a few marginal duties related to business operations, his *primary* duty was the scheduling of freight and the responsibilities that accompany that task (Pl. Reply, Dkt 41 at 3). Plaintiff contends that the important factor in the administrative analysis is that the employee's *primary duty* must be directly related to the "general business operations of the employer" (*id.*, quoting 29 C.F.R. § 541.200(a)(2)).

The parties' positions and the case law make it clear that there are genuine issues of material fact on this prong of the administrative exemption. Plaintiff asserts that his duties included "scheduling trucks, communicating with drivers regarding issues encountered with deliveries, and documenting fuel and expense accounts" (Pl. Br. at 6, citing Ex. 1, B. Hassevoort Dep. at 73; Ex. 2, E. Hassevoort Dep. at 17, 18, 26; Ex. 3, Pl. Dep. at 19). And in addition to working his dispatcher duties, he loaded and unloaded trucks in Defendant's warehouse, primarily on weekends (*id.* at 7, citing Ex. 5, Pl. Aff. ¶ 10).

Defendant asserts that Plaintiff's dispatcher duties never included loading and unloading trucks in the warehouse after hours or on weekends (Def. Br., Dkt 40 at 6, citing Ex. A, B.

7

Hassevoort Aff.; Ex. E., E. Hassevoort Aff.). Defendant states that Plaintiff had experience with warehouse work based on his previous employment with Boar's Head Brand Meats, and it is possible that occasionally, due to his autonomy as a dispatcher, he assisted his coworkers and friends in the warehouse with loading his customer's freight, instead of merely supervising the loading process, but he was not paid for such duties (Def. Br. at 6). Plaintiff was paid $1050 a week as a dispatcher and received quarterly bonuses based on a profit sharing program; Plaintiff was one of only two non-Hassevoort family members included in the profit sharing program (Def. Br. at 6, citing Ex. B., B. Hassevoort Dep. at 44:13-16).

Defendant asserts that the role of its dispatchers, i.e., Plaintiff, included communications with customers in an account management role, scheduling loads and trucks, route planning, communicating with drivers, resolving issues with regard to fuel and expense accounts, coordinating drivers and trucks with other dispatchers, consolidating truckloads to maximize the use of drivers and trucks and minimize costs, and advising Eric Hassevoort and/or Bruce Hassevoort on discipline issues with drivers (Def. Br. at 12-13). In particular, Plaintiff managed two furniture accounts for Defendant: Nucraft and Acadia, managing truck drivers operating on a nationwide basis (*id.* at 7; Def. Ex. E., E. Hassevoort Aff. ¶ 5). The Nucraft account is one of Defendant's largest and most important accounts, and a loss of its business would represent a significant financial loss to Defendant; however, furniture accounts did not usually require after hours or weekend truck service (Def. Br. at 7-8, citing Ex. C., E. Hassevoort Dep. at 16:1-19; Ex. E., E. Hassevoort Aff. ¶ 19). Plaintiff was responsible for communicating directly with Defendant's customers about "loads, trailer requirements, scheduling, problems with drivers, breakdowns or delays, and any other concerns or problems which a customer may have" (Def. Br., Ex. E., E. Hassevoort Aff. ¶ 12).

Defendant also submits Plaintiff's résumé, posted on Indeed Resume, which states that his duties for Defendant included:

- Dispatch inbound and outbound freight carriers/drivers
- Coordinate LTL freight pick up, consolidation and re-loads consisting of perishable and non-perishable goods
- Customer delivery appointments and follow up communication
- Broker inbound and outbound excess freight
- Daily utilization of Dr. Dispatch software for invoicing and PC Miler
- Monitor Carrier GPS website
- Uphold and enforce all DOT/Safety/Transportation policies
- Data entry for all areas of the business.

(Def. Ex. J, Plaintiff's Resume). It is clear on this record that Plaintiff's assigned duties are in significant dispute, on matters material to the criteria for the administrative exemption.

But even if Plaintiff's assigned duties per se were not in dispute, the import and nature of his duties in the context of Defendant's overall business operations are disputed and preclude judgment as a matter of law. As Defendant argues, and the case law bears out, depending on the nature of the company's business, a dispatcher position may have more significant implications for some companies' overall operations than for others. For example, in *Alvarez*, 541 F. Supp. 2d 1308, cited by Plaintiff, the dispatcher position involved dispatching cars for customers needing chauffeur service, e.g., from the airport; whereas, in *Rock*, 380 F. App'x 875, cited by Defendant, the Plaintiff was a dispatcher for the defendant's crane rental division and the court found that his primary duty was management of that division. In *Allemani*, 2014 WL 2574536, the dispatcher worked for an independent trucking company, Pratt (Corrugated Logistics), but the trucking company was formed by Pratt Industries to provide logistical and transportation services to Pratt Industries' corrugated

9

box plant and paper mill to ship raw materials and/or finished product to its customers.[2] *Id.* at *12. The dispatchers were supervised by a logistics manager; the shipping department, not dispatchers, determined which loads went to which customers; dispatchers received a list of pre-approved backhauls; they had only limited authority with respect to drivers; they occasionally interacted with Pratt customers, but all customer complaints were handled by the customer service department or the logistics manager. *Id.* at *1-4. The court agreed with the plaintiffs-dispatchers that their primary duty—dispatching loads—was not administrative. *Id.* at *8. Other than one customer, the record did not show that the dispatchers had "any ongoing contact with customers or any responsibility for maintaining customer relationships, ensuring customer satisfaction, soliciting customers, or responding to customer complaints." *Id.* at *9.

Although Plaintiff relies heavily on *Alvarez*, 541 F. Supp. 2d 1308, and *Allemani*, 2014 WL 2574536, in support of his non-exempt status, the circumstances of the dispatchers in those cases are not sufficiently analogous to mandate a conclusion in this case that Plaintiff's primary duty was not directly related to Defendant's management or general business operations. The evidence is not so one-sided that Plaintiff prevails as a matter of law on this element of the administrative exemption.

### B. Exercise of Discretion and Independent Judgment

The record is similarly disputed with respect to Plaintiff's exercise of discretion and independent judgment as a dispatcher for Defendant. The Code of Federal Regulations points to the following factors to consider when assessing whether an "employee exercised discretion and

---

[2] The trucking company also transported "backhauls" (loads picked up and delivered on the return from the initial delivery). *Allemani*, 2014 WL 2574536, at *1.

independent judgment with respect to matters of significance":

> "whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances."

*Alvarez*, 541 F. Supp. 2d at 1312-13 (quoting 29 C.F.R. § 541.201(b)).

Plaintiff argues that he did not make independent judgments on any matters of significance when he was a dispatcher for Defendant. Plaintiff asserts that he "did not have the authority to interpret or implement management decisions, he did not have the ability to negotiate or bind the company on significant matters, he didn't represent the company in resolving disputes or grievances, and did not have the experience in dispatching to provide expert advice to the company" (Pl. Br. at 14, citing Ex. 5, Pl. Aff. ¶ 8).

Defendant has presented evidence to the contrary. Defendant asserts that dispatchers, including Plaintiff, had to exercise discretion and make judgment calls with regard to loading, scheduling, routes, customer inquiries and customer service, driver issues, and driver financial accounts (Def. Br. at 16). Defendant argues that as the dispatcher assigned to one of Defendant's largest accounts, Plaintiff's decisions with regard to Nucraft were "absolutely significant" in nature (*id.*, citing Ex. E., E. Hassevoort's Aff.). Eric Hassevoort avers in his affidavit that (1) all dispatchers come to him, as the head dispatcher, with questions regarding any issues that they were

unable to handle themselves, but they were expected to exercise their own independent judgment as much as possible; (2) dispatchers, including Plaintiff, are only required to inform him of problems regarding truck accidents and timing issues that could affect the shipments of loads assigned to other dispatchers so that he could coordinate with the other dispatchers; (3) he is frequently out of the office for days at a time, driving truck, and during that time, the dispatchers make judgment calls and decisions based solely on their training and experience; and (4) a seasoned dispatcher does not have to confer with him to make important decisions that could significantly affect the profitability of Defendant, as reflected by the fact that they worked alone on Saturdays, and that he was often out of the office driving (Def. Ex. E., E. Hassevoort's Aff. ¶¶ 13-16). In his deposition testimony, Eric Hassevoort indicated that in the course of their jobs with Defendant, the dispatchers made judgment calls with regard to loads or clients that would have a significant financial impact on Defendant (Def. Br. at 16, citing Ex. C, E. Hassevoort Dep. at 27:19-23).

The exercise of discretion, as the term is meant under the FLSA, generally includes "'responsibilities dealing with matters of broad scope and significant detail that have a profound effect on the employer's business,' such as: 'matters that have significant financial impact, negotiating and binding the company on significant matters; and planning long-or short-term business objectives.'" *Allemani*, 2014 WL 2574536, at *12 (quoting *Alvarez*, 541 F. Supp. 2d at 1313–14 (citation omitted)). There is conflicting evidence, and thus genuine issues of material fact, whether the third prong of the administrative exemption is met.

### IV. Conclusion

In light of the legal standards, and case law, there are clearly issues of fact as to whether

Plaintiff was an exempt administrative employee under the FLSA.[3]  Accordingly, Plaintiff's motion for partial summary judgment on the issue of Defendant's liability is denied.

An Order will be entered consistent with this Opinion.

Dated: June  10, 2015          /s/ Janet T. Neff
                               JANET T. NEFF
                               United States District Judge

---

[3] Although the parties argue their positions on the number of hours Plaintiff worked, it appears unnecessary to address this issue since the Court has determined that Plaintiff is not entitled to partial summary judgment on the issue of liability.  In any event, the resolution of this issue hinges on factual disputes and matters of credibility, which are determinations not properly resolved on summary judgment.